**Charles J. Paternoster, OSB No. 024186**
E-mail:  cpaternoster@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, Oregon 97205
Telephone:  (503) 222-1812
Facsimile:  (503) 274-7979

**Justin B. Kaplan, Florida Bar No. 33725**
E-mail:  justin.kaplan@nelsonmullins.com
**Adam Safwat, District of Columbia Bar No. 1024043**
E-mail:  adam.safwat@nelsonmullins.com
*(Pro Hac Vice* **Petitions Forthcoming)**
NELSON MULLINS RILEY & SCARBOROUGH
2 S. Biscayne Boulevard
One Biscayne Tower, 21st Floor
Miami, FL  33131
Telephone:  (305) 373-9436

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ELBOW RIVER MARKETING, LTD, a Canadian corporation; and ELBOW RIVER MARKETING USA, LTD, a Delaware corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>THOMPSON TECHNICAL SERVICES, LLC, an Oregon limited liability company; and MERLIN THOMPSON, an individual,<br><br>    Defendants. | Case No. 3:23-cv-00356<br><br>**COMPLAINT**<br><br>**28 U.S. Code §1332bc – Diversity – Breach of Contract**<br><br>**Prayer > $75,000** |

Page 1 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

## COMPLAINT

Plaintiffs, Elbow River Marketing, Ltd. ("**Elbow River**"), and Elbow River Marketing USA Ltd. ("**ERM**"), through undersigned counsel and pursuant to the Federal Rules of Civil Procedure, sue Defendants, Thompson Technical Services, LLC ("**TTS**"), and Merlin Thompson ("**Thompson**") (collectively, "**Defendants**"), and allege:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Elbow River, is a Canadian corporation with its principal place of business located in Alberta, Canada. It is thus a citizen of Canada.

2. Plaintiff, ERM, is a Delaware corporation with its principal place of business located in Alberta, Canada. It is thus a citizen of Canada.

3. Defendant, TTS, is a limited liability company that was organized in and exists pursuant to the laws of the State of Oregon with its principal place of business located in Lincoln County, Oregon.

4. Defendant, Thompson, is an individual over the age of eighteen who is domiciled in and is therefore a citizen of the State of Oregon.

5. Thompson is TTS's sole member. TTS is therefore a citizen of the State of Oregon.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and more than $75,000 is at issue, exclusive of interest, costs, and fees.

7. This Court has jurisdiction over TTS because it is an Oregon limited liability company, its principal place of business is located in the State of Oregon, and because it consented to personal jurisdiction in this District.

Page 2 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

8.  This Court has jurisdiction over Thompson because Thompson resides in the State of Oregon.

9.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because both Defendants reside in the State of Oregon and therefore the District of Oregon.

## GENERAL ALLEGATIONS

10. Elbow River is a Canadian company that manages an integrated system of railcars, trucks, and pipelines that transport liquid petroleum gas, crude oil, gasoline, diesel, and other energy products derived from natural gas and hydrocarbons.

11. ERM is a domestic subsidiary of Elbow River that imports hydrocarbons into Oregon.

A.  **The Oregon Clean Fuels Program.**

12. Approximately forty percent (40%) of Oregon's greenhouse gas emissions come from transportation. Oregon accordingly invests in programs and policies to decarbonize transportation.

13. Oregon's Clean Fuels Program ("**CFP**") is the State's primary strategy to reduce greenhouse gas emissions from transportation fuels such as gasoline and diesel.

14. The policy goal of the CFP is to reduce the carbon intensity[1] of Oregon's transportation fuels by establishing annual standards that decrease over time.

---

[1] Carbon intensity is the measure of greenhouse gas emissions through the lifecycle of transportation fuels from extraction, refining or production, transportation to a dispensing facility, and combustion of the fuel. The lower the fuel's carbon intensity, the lower its total emissions and a greater reduction in emissions is realized relative to the fossil fuel they displace.

Page 3 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

15.     Fuels that are lower than the annual standard—such as electricity used to charge electric vehicles' batteries—generate clean fuel credits ("**Credits**"). Fuels that are higher than the annual standard—like gasoline and diesel—generate deficits.

16.     Importers of gasoline, diesel, ethanol, biodiesel, and renewable diesel are required to participate in the CFP.

17.     Others, such as owners or dispensers of liquid natural gas, and producers or importers of natural gas, propane, and jet fuel, may voluntarily register to participate in the CFP.

18.     At the end of each calendar year, a participating fuel provider must retire enough Credits to offset the number of deficits it generated in order to be compliant with the standards.

19.     Credits can be sold to businesses that need them to be in compliance with CFP standards, which in turn is intended to generate revenue for businesses that provide the low-carbon fuels that generate Credits. The Credits are accordingly intended to encourage fuel suppliers to source and supply the lowest carbon fuels to customers in Oregon.

B.     **TTS Registers as an Oregon CFP Credit Generator**.

20.     TTS made application to the DEQ on June 14, 2021, to register as a net generator of CFP Credits at least in part to sell them (the "**Credit Generator Application**").

21.     In furtherance of its plan to generate and sell Credits, TTS filed a Credit Generator Application to register three (3) Tellus 120 kW DC fast chargers (the "**Chargers**") that it claimed to be located at 23325 Hwy 18 in Sheridan, Oregon, to generate Credits.

22.     Thompson signed the Credit Generator Application as the "owner" and "primary contact" for TTS.

Page 4 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

23. When he signed the Credit Generator Application, Thompson certified: "I understand that this information will be used by Oregon DEQ for purposes of compliance with OAR Chapter 340, Division 253."

24. On December 27 and 28, 2021, Thompson provided additional information to DEQ regarding the Chargers.

25. TTS's Credit Generator Application was approved on December 29, 2021.

26. TTS became registered as a credit generator under the CFP as a result.

27. Based upon Defendants' representations made in the Credit Generator Application and the additional information that Thompson provided to DEQ in December 2021, DEQ approved TTS's registration as follows:

> This registration covers fuel dispensed for transportation use at your electric chargers located in Oregon. Individual charges will need to be entered into the Oregon Fuels Reporting System (OFRS) using the Fuel Supply Equipment registration form prior to the electricity they dispense being reported.
>
> Effective the date of this registration approval, you are required to comply with the requirements under OAR 340 Division 253. Specifically, the requirements for:
>
> - Providers of electricity under OAR 340-253-0600
> - Recordkeeping under OAR 340-253-0600
> - Reporting under OAR 340-253-0620, 0630 and 0650.

C.  **TTS Registers to Sell Credits That Defendants Knew or Should Have Known did not Exist.**

28. On February 6, 2022, TTS entered data regarding the Chargers into the Oregon Fuels Reporting System as follows:

- Facility Name: Valley Market (TTS-2325 Hwy 18)

- Address: 23325 HWY 18, Sheridan, OR, US 93738

- Charging Type: Non-Residential (DCF-CCS and CHAdeMO)

Page 5 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

- Manufacturer:  TPG 120KW

- Serial Nos:  20211260182, 20211260183, 20211260184

29. On May 19, 2022, a broker that TTS had hired arranged for the sale of 12,000 Credits to ERM at a price of $112 per Credit ($1,344,000.00 in total), for delivery in the fourth calendar quarter of 2022.

30. In connection therewith, Elbow River and TTS executed a LEAP Master Agreement for Purchasing and Selling Oregon Clean Fuels Program Credits that would govern the transaction (the "**LEAP Agreement**"). A true and correct copy of the LEAP Agreement is attached hereto as Exhibit "A."

31. Thompson executed the LEAP Agreement on behalf of TTS in his capacity as CEO.

32. The LEAP Agreement includes a representation and warranty by Defendants that "each CFP Credit transferred to Buyer hereunder is valid as contemplated by the Oregon Clean Fuels Program Regulations and is, indefeasibly, a 'Credit' as defined by the Oregon Clean Fuels Program Regulations."

33. In connection with his execution of the LEAP Agreement, on May 19, 2022, Thompson also executed a Confirmation for CFP Credits Transaction as TTS's CEO. A true and correct copy of the May 19, 2022, Confirmation for CFP Credits Transaction is attached hereto as Exhibit "B."

34. On June 10, 2022, Defendants submitted a quarterly CFP report to DEQ via the Oregon Fuels Reporting System for the period beginning January 1, 2022, through March 31, 2022 (the "**Q1 2022 Report**").

Page 6 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

35. In connection with submitting the Q1 2022 Report, Thompson certified:

I, Merlin Thompson, as [a] person with Signatory Authority, am submitting this report on behalf of Thompson Technical Services, LLC, with the understanding that the information contained in this report is considered an official submission to Oregon Department of Environmental Quality for purposes of compliance with the Clean Fuels Program (CFP) regulation.

Furthermore, by submitting this report, I understand that I am bound by, and authenticate this record, and attest to the statements contained within. I also understand that submitting or attesting to false statements may constitute a serious crime, punishable under the Oregon Penal Code, or other criminal offenses punishable under state, municipal, or federal law. I certify that the information supplied herein is correct and that I have the authority by the company identified herein to submit this report.

36. The Q1 2022 Report claimed that TTS dispensed a total of 14,900,000 kilowatt hours (kWh) of electricity to vehicles from the Chargers during the first quarter of 2022; and referenced a fuel pathway code for the Chargers that corresponds to electricity for the Chargers as having been provided by Consumers Power, Inc. ("**Consumers Power**").

37. Consumers Power is a rural electric cooperative that provides electricity in certain portions of Benton, Lane, Lincoln, Marion, and Polk Counties in Oregon. It does not provide electricity to any customers in Sheridan, Oregon, where the Chargers are located, however.

38. Instead, Portland General Electric ("**PGE**") supplies power in the area where the Chargers were located.

39. This distinction is important because PGE's generation of electricity uses considerably more carbon than does Consumers Power's.

40. Consumers Power has a carbon intensity score of 16.77 grams of carbon dioxide equivalent per megajoule of energy whereas PGE's score is 146.02 grams of carbon dioxide equivalent per megajoule of energy.

Page 7 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

41. Had Defendants reported the correct fuel pathway code (for electricity PGE generated), it would have only generated 9,156 Credits—not the 16,089 reported.

42. To make matters worse, though Defendants stated in the Q1 2022 Report that TTS had dispensed a total of 14,900,000 kilowatt hours of electricity to vehicles from the Chargers in the first quarter of 2022, the Chargers were never installed or operational during that time.

43. Even if they had been in operation, the Chargers also physically could not have generated the amount of electricity Defendants reported to DEQ in the Q1 2022 Report.

44. In short, Defendants submitted false information in connection with registering Credits.

**D.  TTS Markets and Sells Fictitious Credits to Plaintiffs.**

45. On June 24, 2022, Thompson sent an email to Plaintiffs stating that TTS had 16,000 Credits available to transfer.

46. Plaintiffs responded that they would buy the 12,000 Credits that Elbow River had previously agreed to purchase, and that they would buy an additional 4,000 available credits at $111 per Credit.

47. TTS and Elbow River accordingly executed a second Confirmation for CFP Credits Transaction on June 27, 2022, reflecting the sale of an additional 4,000 Credits at the agreed-upon price of $111 per credit, which Thompson signed in his capacity as TTS's CEO. A true and correct copy of the foregoing is attached hereto as Exhibit "C."

48. On June 26, 2022, TTS submitted CFP Credit Transfer Forms with DEQ for the transfer of the 16,000 Credits. True and correct copies of the foregoing are attached hereto as Composite Exhibit "D."

Page 8 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

49.     Both CFP Credit Transfer Forms include the following statement on the first page: "Only credits that have been generated and recognized in the CFP Online System can be traded, and transfers must be in compliance with the rules of OAR 340-253."

50.     They also include the following certification: "By signing, each person below declares that all information provided herein is true and correct, and to the best of his/her knowledge and belief."

51.     Thompson electronically executed both forms in his capacity as TTS's CEO.

52.     On July 4, 2022, Plaintiffs transferred $1,784,000.00 to TTS for ERM's purchase of the 16,000 Credits from TTS.

53.     On July 19, 2022, Plaintiffs agreed to purchase an additional 36,000 Credits from TTS for $3,636,000.00 with delivery to occur on or before August 25, 2022.

54.     On information and belief, the additional Credits that TTS had contracted to sell Plaintiffs were to have been generated in the second quarter of 2022.

55.     Defendants prepared a draft quarterly CFP report for submission to DEQ in order to generate those Credits (the "**Q2 2022 Report**").

56.     Defendants represented in the draft Q2 2022 Report that two of the three Chargers had dispensed approximately 30,000,000 kWh of electricity during the second quarter of 2022.

57.     The Chargers were never installed or operational during Q2 2022, however; and accordingly, could not have generated any electricity.

58.     Moreover, if they had been operational and actively charging electric vehicles for every minute of Q2 2022, the amount of electricity in the draft Q2 2022 Report exceeded what all three (let alone only two) Chargers could have possibly dispensed during a calendar quarter.

Page 9 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

E.   **DEQ Suspends Credits that TTS Sold to ERM because they are Invalid.**

59.   On August 12, 2022—before Plaintiffs were to pay for and take delivery of the additional (fictious) 36,000 Credits from TTS—DEQ provided notice to ERM of its initial determination to impose an interim suspension on TTS's CFP account and to impose "an immediate administrative hold on 16,000 CFP credits in [ERM's] account that [it] acquired from TTS." A true and correct copy of the foregoing is attached hereto as Exhibit "E."

60.   DEQ's stated basis was that the Chargers were likely never operational and that, even if they were, DEQ questioned the veracity of Defendants' statement in the Q1 2022 Report that the Chargers had generated 14,900,000 kilowatt hours in the first quarter of 2022 because they would have generated only 2,232,800 kilowatt hours "if each charger were operated for the entirety of Q1 2022. . ." *Id.*

61.   DEQ ultimately suspended the Credits that Plaintiffs had purchased from TTS on the grounds that they are illegitimate, invalid, and have no value. It provided notice of same to ERM on September 30, 2022. A true and correct copy of the foregoing is attached hereto as Exhibit "F."

62.   All conditions precedent to the filing of this action have occurred, have been performed, have otherwise been fulfilled or their performance has been waived.

63.   ERM has retained the services of undersigned counsel for the purpose of bringing this action and has obligated itself to pay a reasonable fee for the costs and attorneys' fees associated therewith.

Page 10 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

## COUNT I
## Breach of Contract
### (Against TTS)

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

64. On or about May 20, 2022, Elbow River and TTS executed the LEAP Agreement.

65. TTS represented and warranted in Section 3.2(b) of the LEAP Agreement that the Credits it sold to Plaintiffs were "valid as contemplated by the Oregon Clean Fuels Program Regulations and is, indefeasibly, a 'Credit' as defined by the Oregon Clean Fuels Program Regulations."

66. Plaintiffs paid TTS $1,784,000 for 16,000 Credits in accordance with the LEAP Agreement.

67. On September 30, 2022, DEQ invalidated those Credits, however.

68. TTS accordingly breached Section 3.2(b) of the LEAP Agreement.

69. Plaintiffs have been damaged as a result.

## COUNT II
## Breach of Contract
### (Against TTS)

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

70. On or about May 20, 2022, Elbow River and TTS executed the LEAP Agreement.

71. Plaintiffs paid TTS $1,784,000 for 16,000 Credits in accordance with the LEAP Agreement

72. On September 30, 2022, DEQ invalidated those Credits, however.

Page 11 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

73. On October 7, 2022, Plaintiffs provided written notice in accordance with the LEAP Agreement to TTS that the Credits which TTS transferred had become invalid.

74. Section 7.1 of the LEAP Agreement requires that TTS, at its sole cost and expense, initiate 16,000 replacement Credits on or before October 17, 2022.

75. Plaintiffs thus demanded in its October 7, 2022, correspondence to TTS that TTS initiate replacement Credits no later than October 17, 2022.

76. TTS did not deliver any replacement Credits despite having been contractually obligated to do so.

77. Section 7.2 of the LEAP Agreement provides that, if TTS failed to timely or fully comply with its obligation set forth in Section 7.1 to initiate replacement Credits upon invalidation, Plaintiffs could elect certain remedies contractually available to it, including demand that TTS provide replacement Credits.

78. In accordance with Section 7.2 of the LEAP Agreement, Plaintiffs elected to demand replacement Credits and provided notice of same to TTS on October 21, 2022.

79. Again, TTS failed to comply.

80. TTS was accordingly in breach of the LEAP Agreement.

81. On November 15, 2022, Plaintiffs provided TTS one last written notice of its breach and requested that TTS take corrective measures.

82. Again, TTS did not.

83. ERM was damaged as a result of TTS' breach of the LEAP Agreement.

Page 12 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

## COUNT III
## Fraudulent Inducement
**(Against Defendants)**

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

84. Defendants made a material misrepresentation to Plaintiffs when Thompson, in his capacity as TTS's CEO, stated in writing on June 24, 2022, that TTS had 16,000 Credits that it could sell to Plaintiffs.

85. At the time that Thompson made such representation, he knew or should have known that TTS did not, in fact, have 16,000 valid Credits.

86. Thompson nonetheless made such material misrepresentation with the intent to induce Plaintiffs' reliance thereon.

87. Plaintiffs did, in fact, justifiably rely on Thompson's misrepresentation and delivered $1,784,000 to TTS in exchange for what it turns out were 16,000 invalid credits.

88. Plaintiffs were directly and proximately damaged as a result of Defendants' misrepresentation.

## COUNT IV
## Negligent Misrepresentation
**(Against Defendants)**

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

89. Defendants made a material misrepresentation to Plaintiffs when Thompson, in his capacity as TTS's CEO, stated in writing on June 24, 2022, that TTS had 16,000 Credits that it could sell to Plaintiffs.

Page 13 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

90. At the time that Thompson made such representation, he knew or should have known that TTS did not, in fact, have 16,000 valid Credits.

91. Thompson nonetheless made such material misrepresentation with the intent to induce Plaintiffs' reliance thereon.

92. Plaintiffs did, in fact, justifiably rely on Thompson's misrepresentation and delivered $1,784,000 to TTS in exchange for what it turns out were 16,000 invalid credits.

93. Plaintiffs were directly and proximately damaged as a result of Defendants' misrepresentation.

## COUNT V
### Fraudulent Inducement
### (Against Defendants)

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

94. In the summer of 2022, Defendants made a material misrepresentation to Plaintiffs when Thompson, in his capacity as TTS's CEO, stated that TTS had 36,000 Credits that it could and would sell to Plaintiffs in addition to the 16,000 (fictitious) Credits that TTS had already sold them.

95. When Defendants made such offer, they knew or should have known that TTS had not generated those Credits.

96. At the time that Thompson made such representation, he knew or should have known that TTS did not, in fact, have 36,000 valid Credits.

97. Thompson nonetheless made such material misrepresentation with the intent to induce Plaintiffs' reliance thereon.

Page 14 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

98.     Plaintiffs did, in fact, justifiably rely on Thompson's misrepresentation and agreed on July 19, 2022, to purchase 36,000 Credits from TTS.

99.     In doing so, Plaintiffs forewent the opportunity to purchase 36,000 Credits from other sources.

100.    TTS never delivered the 36,000 Credits.

101.    ERM purchased replacement Credits on the open market for the calendar year 2022.

102.    Between when Plaintiffs agreed to purchase those (fictitious) 36,000 Credits and August 25, 2022, when they were supposed to have been delivered, however, the fair market value of Credits had increased.

103.    Plaintiffs were directly and proximately damaged as a result of Defendants' misrepresentation.

## COUNT VI
### Negligent Misrepresentation
### (Against Defendants)

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

104.    In the summer of 2022, Defendants made a material misrepresentation to Plaintiffs when Thompson, in his capacity as TTS's CEO, stated that TTS had 36,000 Credits that it could and would sell to Plaintiffs in addition to the 16,000 (fictitious) Credits that TTS had already sold them.

105.    When Defendants made such offer, they knew or should have known that TTS had not generated those Credits.

106.    At the time that Thompson made such representation, he knew or should have known that TTS did not, in fact, have 36,000 valid Credits.

Page 15 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

107. Thompson nonetheless made such material misrepresentation with the intent to induce Plaintiffs' reliance thereon.

108. Plaintiffs did, in fact, justifiably rely on Thompson's misrepresentation and agreed on July 19, 2022, to purchase 36,000 Credits from TTS.

109. In doing so, Plaintiffs forewent the opportunity to purchase replacement Credits from other sources.

110. TTS never delivered the 36,000 Credits.

111. ERM was required to purchase replacement Credits on the open market.

112. Between when Plaintiffs agreed to purchase those (fictitious) 36,000 Credits and August 25, 2022, when they were supposed to have been delivered, however, the fair market value of Credits had increased.

113. Plaintiffs were directly and proximately damaged as a result of Defendants' misrepresentation.

## COUNT VII
## Breach of Contract
### (Against TTS)

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

114. On July 19, 2022, Plaintiffs agreed to purchase an additional 36,000 Credits from TTS for $3,636,000.00 with delivery to occur on or before August 25, 2022.

115. Such agreement was made within the auspices of the LEAP Agreement and governed thereby.

116. TTS did not deliver the 36,000 Credits.

Page 16 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

117. On February 3, 2023, Plaintiffs demanded pursuant to Section 7.1 of the LEAP Agreement that TTS initiate replacement Credits no later than February 8, 2023, pursuant to Section 7.1 of the LEAP Agreement.

118. Having failed to comply, Plaintiffs thereafter provided notice to TTS pursuant to Section 7.2 of the LEAP Agreement of its election that TTS pay the positive difference between the Market Value of the Qualified Replacement CFP Credits and $3,636,000.00.

119. TTS failed to do so within five (5) business days.

120. TTS accordingly breached the LEAP Agreement.

121. Plaintiffs were damaged as a result.

## COUNT VIII
## Fraudulent Transfer
### (Against Defendants)

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

122. On or around July 4, 2022, TTS incurred a substantial debt to Plaintiffs in the amount of $1,784,000.00.

123. Shortly thereafter, TTS made a series of purchases (the "**Fraudulent Transfers**") for Thompson's benefit, including:

   a. Five electric vehicles (the "**Vehicles**");

   b. Two Harley Davidson motorcycles (the "**Motorcycles**"); and

   c. A Hawaiian resort vacation costing over $13,000.

124. Thompson retained possession or control of the Vehicles and Motorcycles after the transfer.

Page 17 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

125. Before the Fraudulent Transfers were made, TTS and Thompson knew or should have known of the threat of suit.

126. The Fraudulent Transfers were substantially all TTS' assets.

127. TTS was insolvent or became insolvent shortly after the Fraudulent Transfers were made.

128. TTS made the Fraudulent Transfers with actual intent to hinder, delay, or defraud ERM.

129. Plaintiffs have been directly and proximately damaged as a result.

## COUNT IX
## Fraudulent Transfer
**(Against Defendants)**

Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 63 as if set forth herein, and further allege:

130. On or around July 4, 2022, TTS incurred a substantial debt to Plaintiffs in the amount of $1,784,000.00.

131. Shortly thereafter, TTS made a series of purchases for Thompson's benefit, including the Vehicles, Motorcycles, and a Hawaiian resort vacation costing over $13,000.

132. In purchasing the Vehicles, Motorcycles, and vacation for Thompson, TTS in effect transferred the value of same to Thompson—an insider.

133. TTS made some or all of the Fraudulent Transfers, including the Motorcycles and Hawaii Vacation, to Thompson without receiving a reasonably equivalent value in exchange for the Fraudulent Transfer.

134. TTS was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

Page 18 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979

135.    TTS intended to incur or believed or reasonably should have believed that it would incur, debts beyond TTS's ability to pay as they become due.

136.    Thompson is an insider of TTS.

137.    TTS was insolvent at the time of the Fraudulent Transfers.

138.    Thompson had reasonable cause to believe TTS was insolvent.

139.    Plaintiffs have been directly and proximately damaged as a result.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Elbow River Marketing, Ltd., and Elbow River Marketing USA Ltd., demand judgment against Defendants, Thompson Technical Services, LLC, and Merlin Thompson, actual and consequential damages against Defendants, jointly and severally, in an amount according to proof at trial, prejudgment and post judgment interest, punitive damages in the event that leave to seek same is granted, attorneys' fees and costs, and such other and further relief as this Court deems just and proper.

**DATED this 13th day of March, 2023.**

PARSONS FARNELL & GREIN, LLP


By:    *s/Charles J. Paternoster*
       **Charles J. Paternoster, OSB No.** 024186
       Email: cpaternoster@pfglaw.com
       Telephone: (503) 222-1812
       Of Attorneys for Defendants

Page 19 - **COMPLAINT**

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812   FAX: (503) 274-7979